UNITED STATES OF AMERICA

-vs-                                                    Case No.  8:06-cr-43-T-24 MAP

MICHAEL L. CONE and
JOANNE K. CONE

_____/

## ORDER

This cause comes before the Court on the Government's Motion to Vacate Without

Prejudice Preliminary Orders of Forfeiture as to Substitute Assets.  (Doc. No. 357).  ClearGlass,

LLC is the only potential claimant that has filed a response in opposition (Doc. No. 361, 364,

386), to which the Government has filed a reply (Doc. No. 375).  The Court held a hearing on

this motion on July 15, 2009.

## I.  Background

On October 5, 2007, Michael and Joanne Cone, husband and wife, pled guilty to one

count of conspiracy to commit bankruptcy fraud.[1]  (Doc. No. 181, 182).  In their plea

agreements, the Cones agreed to the forfeiture of real property that they owned as tenants by the

entireties located at 5102 and 5032 West Longfellow Avenue ("subject properties").  (Doc. No.

181, 182).  The forfeiture of the subject properties was made in satisfaction or partial satisfaction

of a forfeiture money judgment of over $1.776 million that the Cones were jointly and severally

liable for.  (Doc. No. 181, 182, 276, 304).  The $1.776 million represents the amount of

_____

[1]Michael Cone also originally pled guilty to one count of wire fraud (Doc. No. 182), but he later
withdrew his plea to that count and instead pled guilty to two counts of bankruptcy fraud (Doc. No. 230).

restitution that the Cones owe to the two victims of the fraud–the United States Bankruptcy Court and St. Paul Fire and Marine Insurance Company ("St. Paul").[2]  (Doc. No. 276, 304).

On May 2, 2008, Michael Cone was sentenced, at which time the Forfeiture Money Judgment and Order for Substitute Assets was entered.  (Doc. No. 276).  In that preliminary order of forfeiture ("POF"), Michael Cone forfeited all of his interest in the subject properties to the United States.  (Doc. No. 276).  Joanne Cone was not sentenced until June 20, 2008, at which time a Forfeiture Money Judgment and Order of Substitute Assets was entered as to her, and she forfeited all of her interest in the subject properties to the United States.  (Doc. No. 304).

Thereafter, on July 25, 2008, ClearGlass filed a timely petition under 21 U.S.C. § 853(n) to assert its alleged interest in the subject properties.  (Doc. No. 315).  Specifically, ClearGlass contends that it has a lien on the subject properties to the extent of Michael Cone's interest therein, due to a $25 million judgment against Michael Cone recorded on January 5, 2006 that was assigned to ClearGlass on September 20, 2007.[3]  (Doc. No. 315).

Three other claimants also filed § 853 petitions claiming an interest in the subject properties: Marcelino Huerta (Doc. No. 382), Washington Mutual Bank ("WaMu") (Doc. No. 262, 316), and Douglas Belden, Tax Collector (Doc. No. 329).  These three claimants do not oppose the Government's motion to vacate the POFs.  The IRS is also alleged to have an interest in the subject properties, although it did not file a § 853 petition.

## II.  Motion to Vacate

In the instant motion, the Government asks the Court to vacate the POFs entered against Joanne and Michael Cone to the extent that the POFs seek forfeiture of the subject properties. The Government states it is moving to vacate the POFs in order to allow its Financial Litigation

---

[2]St. Paul assigned its interest in the restitution to ClearGlass (Doc. No. 385), and the Bankruptcy Court assigned its interest in the restitution to BRA Associates, LLC (Doc. No. 378).

[3]St. Paul obtained a $25 million judgment against Michael Cone that St. Paul recorded on January 5, 2006.  (Doc. No. 315).  On September 20, 2007, St. Paul assigned the judgment to ClearGlass, and ClearGlass recorded the assigned judgment on September 21, 2007.  (Doc. No. 315).

Unit ("FLU") to proceed against the subject properties and liquidate them pursuant to the Mandatory Victim Restitution Act ("MVRA"). At the hearing, the Government explained that its intent is to maximize the amount of restitution available for the victims in this case, and proceeding against the subject properties under § 853 will not necessarily result in a remission to the victims, as such must be decided by the Attorney General, pursuant to § 853(i). The Government maintains that by vacating the POFs as to the subject properties, the FLU can proceed against the properties pursuant to the MVRA for the benefit of the victims without petitioning the Attorney General for remission.

ClearGlass opposes the motion, arguing that it would be prejudiced if the Court granted the motion. Specifically, ClearGlass argues that the interests of Huerta, WaMu, and the IRS in the subject properties are extinguished under § 853 (due to defects in, or the non-filing of, their § 853 petitions) if the ancillary proceedings continue and its lien will be first in line, but if the Court vacates the POFs, these claimants may attempt to assert their interests in the subject properties in the alternative proceedings pursued by the FLU and ClearGlass may get nothing. As explained below, the Court finds that ClearGlass does not have standing to object to the motion and that the motion should be granted.

### A. ClearGlass' Standing to Object

This Court finds that ClearGlass does not have standing to object to the Government's motion for two reasons: (1) ClearGlass does not have an interest in the subject properties, as its lien never attached; and (2) claimants to interests in forfeited property do not have standing to object to the Court vacating or amending a POF; instead, they can only be heard in adjudicating their interest in the forfeited property as set forth in § 853(n).

### 1. Interest in the Subject Properties

ClearGlass does not have a recognizable interest in the subject properties, because the subject properties were held by the Cones as tenants in the entirety. Property held as tenants by the entirety is not subject to a lien against only one tenant, and ClearGlass' judgment is only

against Michael Cone. See Sharp v. Hamilton, 520 So. 2d 9, 10 (Fla. 1988). ClearGlass has not cited any persuasive authority to support its contention that Michael Cone ever held an interest in the subject properties as anything other than as a tenant in the entirety with Joanne Cone since January 5, 2006 (the date the $25 million judgment against Michael Cone was recorded), and as such, ClearGlass' lien could not have attached to his interest in the subject properties.[4]

ClearGlass argues that since a tenancy by the entireties can be terminated by an agreement between a husband and wife, the plea agreements entered into by the Cones terminated their tenancy by the entireties. Specifically, ClearGlass argues that when the Cones entered into their plea agreements on October 5, 2007, they agreed to transfer their interests in the subject properties to the Government, which terminated their tenancy by the entireties because the required unities were destroyed. Therefore, argues ClearGlass, since the Cones no longer held the subject properties as tenants by the entireties after they entered into their plea agreements, ClearGlass' lien attached to Michael Cones' interest therein. This argument has no merit.

In order to hold property as tenants by the entireties, six unities must be present:

(1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).

Beal Bank, SSB v. Almand & Assocs., 780 So. 2d 45, 52 (Fla. 2001)(citations omitted). There can be no argument that the unities of time, title, and marriage existed, as there has been no evidence submitted to the Court that the Cones did not acquire the subject properties at the same time, with their interests deriving from the same title, and that they remained married after

_____

[4]This Court notes that while "federal law decides what interests are subject to forfeiture[,] . . . state property law defines what those interests are in the first instance." U.S. v. Kennedy, 201 F.3d 1324, 1334 (11th Cir. 2000)(citations omitted). Thus, the Court looks to Florida state law to determine whether ClearGlass' lien ever attached to Michael Cone's interest in the subject properties.

acquiring the properties. It appears that ClearGlass is arguing that the unities of possession, interest, and/or survivorship were destroyed when the Cones entered into the plea agreements, but ClearGlass fails to cite persuasive authority in support of this argument.

When the Cones entered into their plea agreements with the Government, their interests in the subject properties remained unchanged. The plea agreements were merely agreements to transfer the properties to the Government at a later date. Agreements to sell property, transferring title on a date after the execution of the sales contract, are common. In such situations, title to the property does not pass at the time of the execution of the agreement, but instead, it passes on the date agreed to.

The case of <u>Pegram v. Pegram</u>, 821 So. 2d 1264 (Fla. 2d DCA 2002), which was cited by ClearGlass, actually supports the conclusion that the plea agreements did not destroy the unities and transform the Cones' interests to that of tenants in common or joint tenants. In <u>Pegram</u>, a husband and wife entered into a property settlement agreement in May of 1996, in which the husband agreed to execute a quitclaim deed to real property held by them as tenants by the entirety to the wife individually. <u>See</u> <u>id.</u> at 1265. In July of 1996, the husband and wife divorced, and in August of 1996, he executed the quitclaim deed. <u>See</u> <u>id.</u> Since a divorce terminates a tenancy by the entirety, the <u>Pegram</u> court found that the property was held by them as tenants in common from the date of their divorce until the quitclaim deed was executed. <u>See</u> <u>id.</u> at 1266. Thus, when the husband and wife entered into the agreement in May of 2006 to change their interests in the property at a future date, such did not change their ownership interests in the property from tenants in the entirety to that of tenants in common or joint tenants. Accordingly, the plea agreements entered into by the Cones did not transform their interests in the subject properties from tenants by the entireties to tenants in common or joint tenants.

The earliest date that the tenancy by the entireties could have been destroyed in the subject properties was the date that Michael Cone was sentenced. On that date, Michael Cone's interest in the subject properties was transferred to the Government via the POF that was entered

as part of his judgment.  See Sheldon v. U.S., 7 F.3d 1022, 1027 (Fed. Cir. 1993)(stating that

"[t]itle to forfeited property transfers to the United States upon entry of a judgment of

forfeiture"); U.S. v. Pelullo, 178 F.3d 196, 201 (3d Cir. 1999).  Thus, after the POF was entered,

Michael Cone no longer held an interest in the subject properties, as his interest was transferred

to the Government, resulting in the Government and Joanne Cone holding the properties as

tenants in common (until she was sentenced and a POF was entered that transferred her interest

to the Government).

Michael Cone's interest in the subject properties, at all times, was as a tenant in the

entireties with Joanne Cone.  The Court rejects ClearGlass' argument that immediately prior to

the transfer of his interest in the subject properties to the Government, Michael Cone held the

property as a tenant in common or joint tenant with Joanne Cone by virtue of the impending

transfer.  ClearGlass fails to cite any case law that actually supports such a theory.

In Sharp v. Hamilton, 520 So. 2d 9, 10 (Fla. 1988), the Florida Supreme Court rejected

the argument that when a spouse transfers property owned as tenants by the entirety to the other

spouse individually, there is a moment immediately before the transfer during which a lien

against the transferring spouse's interest can attach.  While Sharp was decided in the context of a

divorce, there is no indication that the case does not apply to all transfers by spouses holding

interests as tenants by the entireties.  See, e.g., Losey v. Losey, 221 So. 2d 417, 418 (Fla.

1969)(finding that when a husband and wife transferred 3/4 of their ownership in property that

was held as tenants by the entireties to their children, the spouses' ownership of the remaining

1/4 interest remained held as tenants by the entireties).

The Court notes that the cases cited by ClearGlass in support of its contention that its lien

attached to the subject properties do not actually support its position.  For example, in Vining v.

Martyn, 726 So. 2d 336, 337 (Fla. 4th DCA 1999), a husband and wife gave certificates of

deposit that were held by them as tenants by the entireties to a surety as collateral.  The surety

ending up using some of the pledged funds to pay off the husband's judgment creditor.  See id.

The issue before the court was whether the proceeds that remained after the payment to the judgment creditor were still held by the husband and wife as tenants by the entirety. See id. The court found that when the funds were pledged as collateral, they were no longer held by the husband and wife as tenants by the entirety, which made the surplus funds held by the surety available to the husband's creditors. See id.

Vining stands for the proposition that when spouses give up control of their property, the unity of possession is destroyed, which terminates a tenancy by the entirety. Such a finding is consistent with this Court's analysis of the Cones' interest in the subject properties

Likewise, ClearGlass' reliance on Sheldon v. Waters, 168 F.2d 483 (5th Cir. 1948), is misplaced. Sheldon stands for the proposition that spouses can make agreements, evidenced only by their conduct, to terminate interests they hold as tenants by the entireties in property (other than real property). See id. at 485, 486. Sheldon has no application to the instant case, which involves real property, as the court in Sheldon specifically noted that "[t]here was indeed no sufficient agreement to alter their interests in any realty, for that would require a writing." Id. at 485.

Thus, as explained above, the Court finds that ClearGlass has not shown that its lien ever attached toMichael Cone's interest in the subject properties. Therefore, ClearGlass' alleged lien does not provide a basis for finding that ClearGlass has standing to object to the Government's motion.

## 2. Claimants' Standing Once a POF is Entered

Even if ClearGlass' lien had attached to Michael Cone's interest in the subject properties, ClearGlass' interest in the properties would not give it standing to object to the instant motion. A claimant's standing under § 853 to adjudicate their interest in forfeited property does not equate to standing to object to a motion to vacate a provision in a POF. See U.S. v. BCCI Holdings (Luxembourg), S.A., 795 F. Supp. 477, 479 (D.D.C. 1992)(finding that claimants to property forfeited under 18 U.S.C. § 1963, the RICO forfeiture statute that is similar to § 853,

did not have standing to oppose the government's motion to amend the POF, as they could only be heard with respect to an adjudication of their interests under § 1963(l), which is substantively identical to § 853(n)). Thus, ClearGlass lacks standing to object to the Government's motion.[5]

### B. Consideration of the Government's Motion

The Government moves to vacate the POFs entered against the Cones to the extent that the POFs seek forfeiture of the subject properties. Upon consideration, the Court finds that the motion should be granted.

Pursuant to Federal Rule of Criminal Procedure 32.2(e), the Government may, at any time, move to amend an existing order of forfeiture. The Government's request in the instant motion is essentially a request to amend the POFs entered against the Cones to eliminate the subject properties, and such is permissible under Rule 32.2(e). This Court notes that it has the authority to grant the motion and has, on prior occasions, vacated POFs that it previously entered. See, e.g., U.S. v. Brewer, 2009 WL 1468585 (M.D. Fla. May 22, 2009); U.S. v. Dyndul, 2009 WL 975747 (M.D. Fla. April 9, 2009). Accordingly, the Court finds that the Government's motion should be granted, and the Court will vacate the provisions of the POFs entered against Joanne and Michael Cone that relate to 5102 and 5032 Longfellow Avenue.

### III. Remaining Motions Filed Pursuant to § 853

Since the Court has vacated the POFs, the motions relating to the § 853 ancillary litigation are now moot. As such, the Court denies the following motions as moot:

- Doc. No. 315: ClearGlass' Motion for Hearing Pursuant to 21 U.S.C. § 853(n)

- Doc. No. 358: ClearGlass' Motion to Dismiss WaMu and Huerta's Petitions

- Doc. No. 359: ClearGlass' Motion Requesting Summary Judgment

_____

[5]Furthermore, ClearGlass' alleged "victim" status, by virtue of St. Paul's assignment of its interest in the restitution, also does not provide ClearGlass with standing to object. See U.S. v. Rubin, 558 F. Supp.2d 411, 426-27 (E.D.N.Y. 2008)(stating that "no law transforms forfeiture into a pool for restitution, nor does any law peg prejudgment assets of the accused to restitution as does the law of forfeiture peg for forfeiture assets directly traceable to an actual offense[;] . . . forfeiture and restitution are parallel, and therefore separate, processes").

- Doc. No. 360: ClearGlass' Motion to Strike WaMu's Settlement Agreement

- Doc. No. 372: ClearGlass' Motion for Entry of Dismissal of WaMu's Petition

- Doc. No. 382: Huerta's Petition for Relief from Forfeiture

- Doc. No. 384: Government's Cross-Motion for Summary Judgment

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     The Government's Motion to Vacate Without Prejudice Preliminary Orders of Forfeiture as to Substitute Assets (Doc. No. 357) is **GRANTED**.

(2)     The provisions of the Preliminary Orders of Forfeiture entered against Joanne and Michael Cone that relate to 5102 and 5032 Longfellow Avenue are hereby **VACATED**.

(3)     The pending motions, filed pursuant to § 853, (Doc. No. 315, 358, 359, 360, 372, 382, 384) are **DENIED AS MOOT**.

**DONE AND ORDERED** at Tampa, Florida, this 18th day of July, 2009.

_Susan C. Bucklew_
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record